# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# HELENA DIVISION

GEORGE EDWARDS
REG. #23567-001                                                                                          PETITIONER

VS.                                          2:07CV00157 BSM/JTR

T.C. OUTLAW, Warden,
FCI, Forrest City, Arkansas;
UNITED STATES PAROLE
COMMISSION                                                                                              RESPONDENTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

    1.       Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.  An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A 149
Little Rock, AR 72201-3325

## I. Background

Pending before the Court is a § 2241 habeas Petition filed by Petitioner, George Edwards. (Docket entry #1.) Respondent has filed a Response (docket entry #10), to which Petitioner has filed a Reply. (Docket entry #19.) Thus, the issues are joined and ready for disposition.

Before addressing the merits of Petitioner's claims, the Court will review the relevant procedural history of this case. On July 26, 1985, Petitioner pleaded guilty to two counts of distribution of cocaine in the Southern District of Illinois. (Docket entry #10, Ex. 1.) On the first count, Petitioner was sentenced to 15-years' imprisonment in the Bureau of Prisons ("BOP"), to be followed with a 10-year term of special parole.[1] On the second count, Petitioner received a 10-year

---

[1]The Sentencing Reform Act, which was effective November 1, 1987, abolished all forms of parole in the federal system. *See* Pub. L. No. 98-473. Because Petitioner committed his offenses and was sentenced prior to the effective date of the Sentencing Reform Act, he received a so-called "old law" sentence. The Court notes that "special parole" is the predecessor to what is now known as supervised release. In *Lueth v. Beach*, 498 F.3d 795, 797 (8th Cir. 2007), the Court explained the

2

suspended term of imprisonment, and was placed on a 5-year term of probation. *Id.*  The latter sentence was ordered to run consecutive to the former.  *Id.*

On April 5, 1991, the United States Parole Commission (the "Commission") placed Petitioner on regular parole from his 15-year term of imprisonment. (Docket entry #10, Ex. 2.)  On September 23, 1994, Petitioner was arrested on a parole violator warrant and charged with 5 violations of parole.  (Docket entry #10, Ex. 3.)  On December 14, 1994, Petitioner appeared for a revocation hearing before the Commission, which found that Petitioner committed the alleged violations and ordered: (1) the revocation of Petitioner's regular parole; (2) credit for "[a]ll of the time spent on parole"; and (3) continuation "to expiration" of Petitioner's 15-year term of imprisonment.  (Docket entry #10, Ex. 4.)

On December 20, 1996, the Commission re-paroled Petitioner, placing him on regular parole until February 8, 2000.  (Docket entry #10, Ex. 5.)  On February 9, 2000, the Commissioner issued

---

difference between "special parole" and "regular parole" as follows:  "[T]he statute authorizing the imposition of special parole commands that special parole be served in addition to, and not concurrent with, other parole. 21 U.S.C. § 841(c) ("A special parole term provided for in this section ... shall be in addition to, and not in lieu of, any other parole provided for by law."); *see also U.S. Parole Comm'n v. Viveros*, 874 F.2d 699, 700-01 (9th Cir.1989) (holding that special parole term imposed on a drug conviction did not begin running until defendant completed parole on a separate conspiracy conviction); *United States v. Qualls*, No. 96-7129, 1997 WL 337534, at *2 (10th Cir. June 19, 1997) ("A special term of parole can only be served after completion of incarceration and any term of regular parole."). The reasons for this requirement were recognized by the Second Circuit in *Mastrangelo v. United States Parole Commission*, 682 F.2d 402, 404-05 (2d Cir.1982) (*per curiam*): "The mandatory special parole term is designed to test the offender's ability to lead a lawful life in the community. ...To permit the special parole term to run concurrently with an ordinary term of imprisonment would undermine this process. Nor is it the answer that the intended effect might be preserved if the prisoner is released on regular parole from a term of imprisonment during some or all of the time that the special parole term is claimed to be running concurrently, since it cannot be known at the time [of sentencing] that the prisoner's future behavior and the parole board's future decision concerning the prisoner's destiny will have led to his release on regular parole by the time petitioner claims the special parole term should commence."  *Beach*, 498 F.3d at 797 (internal footnote omitted).

Petitioner a Certificate of Special Parole, reflecting that Petitioner's special parole term began on that date. (Docket entry #10, Ex. 6.)

On March 3, 2001, Petitioner was charged with 3 violations of his special parole. (Docket entry #10, Ex. 7.) On June 7, 2001, Petitioner appeared for a revocation hearing before the Commission. (Docket entry #10, Ex. 7.) In a July 26, 2001 Notice of Action, the Commission found that Petitioner committed 2 of the 3 alleged violations. (Docket entry #10, Ex. 8.) The Commission: (1) revoked Petitioner's special parole; (2) denied Petitioner credit for the time he had spent on special parole; and (3) gave Petitioner a new date to begin his special parole, December 7, 2001, following the service of 9 months' imprisonment.[2]

On December 7, 2001, the Commission issued a Certificate of Parole, reflecting that Petitioner would be supervised under special parole until March 1, 2011. (Docket entry #10, Ex. 9.) On February 1, 2007, the Commissioner issued a special-parole violator warrant, charging Petitioner with two violations: (1) "use of dangerous and habit-forming drugs," based on positive urine tests on January 2, 2004 (marijuana), January 14, 2004 (morphine/codeine), August 4, 2005 (marijuana), and April 4, 2006 (marijuana); and (2) a "law violation" of extortion or interference with commerce by threat or violence, based on conduct that occurred between November, 2006, through January 16, 2007.[3] (Docket entries #10 and #11.) In a Supplemental Warrant Application dated August 25,

---

[2]The Notice of Action reflects that Petitioner had been detained in federal custody since March 7, 2001. (Docket entry #10, Ex. 8.)

[3]The Warrant Application provides, in part, that "[f]rom 11-2006 to 1-16-2007, [Petitioner] participated in an extortion scheme wherein he blackmailed a professional athlete (through his agent) to pay him $150,000 to avoid publicity of a relationship and alleged pregnancy with the subject's daughter. [Petitioner] was arrested by the [FBI] for the above-cited offense on 1-16-2007." (Docket entry #10, Ex. 10.)

2007, the Commission noted that the facts underlying the alleged "law violation" were the subject of a separate federal prosecution in the Eastern District of Missouri. This criminal case resulted in Petitioner's July 6, 2007 guilty plea to wire fraud, and a 12-month and one-day sentence of imprisonment in the BOP.[4]  (Docket entry #10, Ex. 12.)

After completing the prison sentence resulting from the wire-fraud plea in the Eastern District of Missouri, Petitioner was taken into custody on the special-parole violator warrant on December 7, 2007, and incarcerated at FCI Forrest City.  (Docket entry #10, Ex. 13.)

Petitioner filed this § 2241 habeas action on December 26, 2007.  (Docket entry #1.) On February 14, 2008, Respondents filed their Response.  (Docket entry #10.)  Among other things, Respondents stated that Petitioner was scheduled for a special-parole revocation hearing on or before March 7, 2008.  (Docket entry #10, Ex. 15.)  On March 4, 2008, Petitioner requested an extension of time to file his Reply, stating that he was in the process of being transferred from FCI Forrest City, and that his upcoming hearing before the Commission might moot his claim.[5]  (Docket entry #11.)

---

[4]The Supplement also reflects that Petitioner had been detained since his arrest on January 22, 2007, and that he was currently serving the sentence imposed in the Eastern District of Missouri. (Docket entry #10, Ex. 12.)

[5]On April 21, 2008, Petitioner filed a Notice of Change of Address, reflecting that he is now incarcerated at the Federal Medical Center in Lexington, Kentucky. (Docket entry #16.)  There is no question that, at the time the Petition was filed, Petitioner was incarcerated at FCI Forrest City. Thus, the Court could exercise proper subject-matter and personal jurisdiction over this § 2241 habeas action.

Generally, the proper respondent in a habeas action is the petitioner's "immediate custodian" at the time of filing, the warden of the facility where he is incarcerated.  *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Moreover, a petitioner's post-filing transfer does not defeat jurisdiction.  *See Copley v. Keohane*, 150 F.3d 827, 830 (8th Cir. 1998) (if a district court has proper jurisdiction when a habeas petition is filed a subsequent transfer of the prisoner will not defeat habeas jurisdiction, but only "so long as an appropriate respondent with custody remain[s]" in the district) *(quoting Jones v. Cunningham*, 371 U.S. 236, 243-44 (1963)); *Mujahid v. Daniels*, 413 F.3d 991, 993-94 (9th Cir. 2005) (§ 2241 petitioner incarcerated in the District of Oregon properly named the warden of the

On April 29, 2008, Petitioner filed his Reply. (Docket entry #19.) Although not explained by Petitioner, it appears that his special parole was in fact revoked.

In this habeas action, Petitioner argues that, at the time he was arrested on the special-parole violator warrant in 2007, the Commission no longer had jurisdiction to supervise him and take him

---

institution where he was imprisoned and filed petition in the District of Oregon - "[petitioner's] subsequent transfer and placement onto supervised release do not alter this [jurisdiction] analysis" noting that "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (*quoting Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *United States v. Foster*, 4 Fed. Appx. 605, 607 n.3 (10th Cir. 2001) (unpublished decision) ("Of course, parole or subsequent removal of a petitioner from the district with jurisdiction at the time a habeas petition is filed does not divest the court of its jurisdiction."); *White v. Lamanna*, 42 Fed. Appx. 670 (6th Cir. 2002) (Ohio district court improperly dismissed a properly filed § 2241 petition after prisoner's transfer to federal prison in Indiana - "A district court's jurisdiction generally is not defeated when a prisoner who has filed a § 2241 petition while present in the district is involuntarily removed from the district while the case is pending.").

Importantly, while Petitioner is no longer in the custody of Respondent Outlaw, the Court notes that the Commission has appeared in this action without any objection to jurisdiction. A similar set of facts was presented in *Fletcher v. Reilly,* 433 F.3d 867 (D.C. Cir. 2006), where the Court concluded that habeas jurisdiction continued in the district of filing despite the prisoner's later transfer:

> In his petition for habeas, Fletcher named his immediate custodian, Dennis Harrison, the Warden at the Lorton Correctional Complex [in Virginia and operated by the District of Columbia DOC] , along with Edward F. Reilly, Jr., Chairman of the U.S. Parole Commission. He therefore complied with the "immediate custodian" rule. Shortly after filing his petition, however, Lorton was closed pursuant to the Revitalization Act, and Fletcher was transferred to a federal penitentiary in South Carolina. "[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir.2004) (quoting *Padilla*, 542 U.S. at 441). The Commission has legal authority to effectuate Fletcher's release, so it is a proper respondent in this case. Indeed, the U.S. Parole Commission has appeared in this case, responded to the merits of Fletcher's claim, and raised no objections on grounds of venue or personal jurisdiction. *See Chatman-Bey*, 864 F.2d at 813 ("It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted. ...").

*Fletcher v. Reilly,* 433 F.3d at 875.

into custody. Thus, he requests that the Court order his immediate release from custody.

Respondents argue that Petitioner's claim lacks merit, and that he is not entitled to habeas relief. For the reasons explained below, the Court concludes that Petitioner is not entitled to habeas relief and recommends that the Petition for a Writ of Habeas Corpus be denied.

## II. Discussion

Petitioner argues that he is entitled to habeas relief because the Commission was obligated by statute to hold an "early-termination hearing" within 5 years of the date he was last released on special parole. Petitioner relies on 18 U.S.C. § 4211(c)(1), which provides as follows:

> (c)(1) Five years after each parolee's release on parole, the Commission shall terminate supervision over such parolee unless it is determined, after a hearing conducted in accordance with the procedures prescribed in section 4214(a)(2), that such supervision should not be terminated because there is a likelihood that the parolee will engage in conduct violating any criminal law.

18 U.S.C. § 4211(c)(1).[6] Petitioner specifically contends that, because he was last released on special parole on December 7, 2001, and the Commission did not have a parole-termination hearing on or before December 7, 2006, § 4211(c)(1) automatically terminated the Commission's supervision of him.

Respondents concede that the Commission did *not* hold a timely "early termination hearing" as required by § 4211(c)(1). However, they argue that the failure to hold such a timely hearing does not warrant habeas relief under 28 U.S.C. § 2241.

In *United States ex. rel. Pullia v. Luther*, 635 F.2d 612 (7th Cir. 1980), a § 2241 petitioner

---

[6]Section 4211(c)(1) is part of the Parole Commission and Reorganization Act of 1976, which was later repealed but remains in effect for offenders, such as Petitioner, who committed an offense before November 1, 1987. *See Malave v. Hedrick*, 271 F.3d 1139, 1140 n.2 (8th Cir. 2001) (*citing* Pub. L. 104-232, § 2(a), 110 Stat. 3055 (1996)).

made the identical argument presented in this case, *i.e.*, the mandatory phrase "shall terminate" in § 4211(c)(1) made a timely "early-termination hearing" a prequisite to the Commission's continuing jurisdiction and supervision, and caused an "automatic" termination of supervision without such a hearing. In contrast, the Commission read the words "shall terminate" in conjunction with the phrase "after a hearing" to mean that termination could only result from an actual decision by the Commission, regardless of whether a "early-termination hearing" was held. The Court concluded that the language in § 4211(c)(1) was ambiguous, and looked to the Act's legislative history to support its holding that the petitioner was not entitled to habeas relief:

> [S]tatements [from the Act's Congressional sponsors] make clear that Congress intended that the Commission would exercise its judgment prior to releasing a parolee from supervision. They also recognize that the Commission's judgment will be based on "five continuous years of supervision," which, of course, would be impossible if, as petitioner argues, a hearing had to be held within five years. The lapse of five years gives a parolee the right to a hearing and decision on termination of supervision unless the Commission terminates supervision without a hearing. A holding that the lapse of five years without a hearing and decision against termination gives the parolee a right to termination cannot be squared with these very significant expressions of the result intended by Congress. Where a decision has not been rendered, the parolee may seek the aid of the court in a mandamus action to compel a decision as to his status, but he is not entitled to a writ of habeas corpus.

*Pullia*, 635 F.2d at 616-17. Since the Seventh Circuit's decision in *Pullia*, all of the circuits that have considered this issue have reached the same conclusion: where an "early-termination hearing" under 4211(c)(1) is not timely held, § 2241 habeas corpus relief is not available as a remedy. *See, e.g., Sacasas v. Rison*, 755 F.2d 1533, 1535-36 (11th Cir. 1985) ("the legislative history and existing case law make clear that the appropriate remedy for non-compliance [with § 4211(c)(1)] by the Commission is a mandamus action to compel the required hearing"); *Tatum v. Christensen*, 786 F.2d 959, 963 (9th Cir. 1986) (failure to hold a timely § 4211(c)(1) hearing does not result in automatic

release but only "gives a parolee a right to a Parole Extension Hearing"), *overruled on other grounds*, *Wallace v. Christensen*, 802 F.2d 1539, 1554 (9th Cir.1986); *Penix v. Parole Comm'n*, 979 F.2d 386 (5th Cir. 1992) (concluding that the Commission's jurisdiction does not end despite failure to hold a termination hearing within 5 years and that remedy is a mandamus action to compel a termination hearing); *Morabito v. United States Parole Comm'n*, 181 Fed. Appx. 244, 245 (3rd Cir. 2006) (unpublished decision) ("The remedy for a procedural violation of § 4211(c)(2) is not the termination of parole, but rather, a properly considered decision by the Commission").

In *Benny v. United States Parole Comm'n*, 295 F.3d 977 (9th Cir. 2002), a petitioner who was not provided a timely termination hearing under § 4211(c)(1) filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, or alternatively, a writ of mandamus under 28 U.S.C. § 1361. The Court rejected Petitioner's argument that he was entitled to automatic termination of parole as a habeas remedy, because the nature of the petitioner's claim did not show that his custody was in violation of the laws or Constitution of the United States.[7] Rather, the "Commission's impropriety lies in being late in determining whether to terminate [the petitioner's] parole supervision under the Parole Act's early termination provision. This procedural violation does not affect [the petitioner's] current custody." *Id.* at 988-89. Thus, the petitioner's remedy was to file a mandamus action in district court:

> District courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is proper where " '(1) the plaintiff's claim is clear and certain; (2) the [defendant's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is

---

[7]The Court noted that the habeas remedy might be available to a prisoner after a demonstration of a "causal link between improper action by the Commission and the fact or duration of. . .custody." *Benny*, 295 F.3d at 989.

> available.' " *Oregon Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir.1995) (internal quotation marks omitted) *(quoting Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986)). A petition for a writ of mandamus pursuant to 28 U.S.C. § 1361 is the proper method to compel the Commission to hold an early termination hearing and make a decision pursuant to § 4211(c)(1). *Cf. Thompson v. Crabtree*, 82 F.3d 312, 313 n. 1, 316 (9th Cir.1996) (holding writ of mandamus under 28 U.S.C. § 1361 was proper to compel a revocation hearing where Commission failed to hold a hearing within 90 days of executing a parole violator warrant as required by 18 U.S.C. § 4214).

*Benny*, 295 F.3d at 989.

Petitioner cites to no authority supporting the proposition that the failure of the Commission to hold a timely § 4211(c)(1) hearing entitles him to release, and fails to distinguish the cases interpreting § 4211(c)(1) to reject the relief he seeks. Although the Court is not aware of a decision from the Eighth Circuit Court of Appeals addressing the question presented in this case, it is satisfied that the question would be resolved against Petitioner consistent with its disposition in other circuits.

For the first time in his Reply, Petitioner requests an "alternative" remedy that the Court "suspend Petitioner's parole supervision and sentence as an interim remedy under the Administrative Procedures Act, 5 U.S.C. § 706, and compel the Parole Commission to hold [a § 4211(c)(1)] hearing." (Docket entry #19 at 3.)  In support of this argument, Petitioner cites *Valona v. United States*, 165 F.3d 508, 509-10 (7th Cir. 1998), a case in which the Court construed a prisoner's § 2241 habeas petition requesting a § 4211(c)(1) hearing as a request for "review of an administrative agency's inaction, a step better characterized as a suit under the Administrative Procedure Act [rather] than as a request for a writ of habeas corpus under 28 U.S.C. § 2241." The Court  held that the district court erred in dismissing the petition based on nonexhaustion of administrative remedies, and also erred in requiring the petitioner to file a new, original action for a writ of mandamus:

> The district judge invited [petitioner] to file a new suit seeking mandamus. This step was erroneous, for two reasons laid out in our prior opinion (which the district judge inexplicably did not mention). First, district judges should afford the relief to which the prevailing party is entitled without regard to errors in the pleadings. If [petitioner] is entitled to a writ of mandamus, then the district court should have provided him that relief in the suit he has filed, rather than requiring him to start over. Second, [petitioner's] claim is best understood as one under the APA, which authorizes district courts to "compel agency action unlawfully withheld or unreasonably delayed" without the need of a separate action seeking mandamus. 5 U.S.C. § 706(1).
>
> * * *
>
> The Administrative Procedure Act permits a court, including a court of appeals, to afford interim relief:
>
> "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal ... , may issue all necessary and appropriate process ... to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705.
>
> We conclude that the "necessary and appropriate" step to preserve [petitioner's] rights pending further proceedings is cessation of parole supervision. As of this instant, he is free of parole supervision. Whether the Commission may resume supervision by making a belated finding under § 4211(c) is a subject the district court should explore on remand.

*Valona*, 165 F.3d at 510-11.

The Court concludes that the holding in *Valona* should not be applied or followed in this case. First, it was not until he filed his Reply that Petitioner characterized his claim for relief as one under the APA. In contrast, in *Valona*, the petitioner requested a § 4211(c)(1) hearing as part of the relief sought in his original habeas petition. By failing to obtain leave of Court to amend his habeas Petition to raise this claim, Petitioner deprived Respondents of the opportunity to respond to this argument. Second, the Seventh Circuit's construction of a § 2241 habeas petition as a claim for agency inaction under the APA is the minority position. All of the other circuits that have considered this issue have taken the position that mandamus is the appropriate vehicle to obtain such

11

a hearing. *See Benny*, 295 F.3d at 988; *Penix*, 979 F.2d at 389; *Sacasas*, 755 F2d at 1535-36; *Pullia*, 635 F.2d at 617. Finally, and most importantly, the facts of this case are distinguishable because in *Valona* the petitioner was *not* the subject of a revocation proceeding. Instead, in that case, the Commission had failed not only to hold a timely § 4211(c)(1) hearing, but also to offer *any* justification or explanation of why it continued supervision of the petitioner. In stark contrast, the Petitioner in this case was the subject of a special-parole revocation proceeding, based on his alleged parole violations that *preceded* the expiration of the 5-year period set forth in § 4211(c)(1). Thus, the Court concludes that Petitioner is not entitled to habeas relief under 28 U.S.C. § 2241.[8]

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (docket entry #1) be DENIED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 19th day of May, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8]The Court agrees with Respondents that, because the alleged conduct underlying Petitioner's parole revocation includes a guilty-plea to criminal conduct that occurred during the 5-year early-termination period at issue, it is likely that there is little purpose to be served by a § 4211(c)(1) "early-termination hearing." Nonetheless, if Petitioner wishes to pursue such a hearing, he should file a 28 U.S.C. § 1361 mandamus action requesting that the Commission provide him with such a hearing. Venue of a mandamus action may be brought in any judicial district in which (1) a respondent in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) the petitioner resides if no real property is involved in the action. *See* 28 U.S.C. § 1391(e).